UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL L. SCHAEFER,

    Plaintiff,

v.                                          Case No.  1:00-CV-559

INDIANA MICHIGAN POWER,               HON. GORDON J. QUIST
COMPANY, d/b/a American
Electric Power,

    Defendant.
_____/

## OPINION

Plaintiff, Michael L. Schaefer ("Schaefer"), filed his complaint in this case on July 31, 2000, alleging that his now-former employer, Indiana Michigan Power Company, d/b/a American Electric Power ("AEP"), violated the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 to 219, by failing to pay Schaefer for overtime work at 1-1/2 times his normal hourly rate as required by 29 U.S.C. § 207(a)(1).  On February 26, 2002, the Court issued an Opinion and Order granting AEP's motion for summary judgment and dismissing the case.  Schaefer appealed the Court's decision to the United States Court of Appeals for the Sixth Circuit.  On February 13, 2004, the Sixth Circuit issued its decision reversing this Court's Order granting summary judgment.  Schaefer v. Ind. Mich. Power Co., 358 F.3d 394 (6th Cir. 2004).

While the appeal was pending in the Sixth Circuit, AEP initiated a restructuring at the Cook Nuclear Plant, which resulted in the elimination of several employees, including Schaefer.  Schaefer and the other employees whose positions were eliminated were offered a severance payment in

exchange for signing a Severance and Release of All Claims Agreement, which contained the following provision:

> 6. **Release and Covenant Not to Sue.** In consideration of the foregoing payment and benefits, Employee, on behalf of Employee and his/her heirs, executors, administrators, successors, assigns and personal representatives, hereby releases and forever discharges the Company . . . of and from any and all legal, equitable, and administrative claims and demands of every name, type, act and nature, arising out of or existing by reason of any known or unknown act or inaction whatsoever and occurring prior to execution of this Agreement. This release includes, but is not limited to, any claims, charges, complaints, actions, demands or suits arising, directly or indirectly, out of Employee's employment with and/or separation of employment from the Company, and includes, but is not limited to claims, charges, complaints, actions, demands or suits which may be, have, or might have been asserted under common law or under Federal, State or Local statutes concerning civil rights, unlawful employment practices and/or wage and hour requirements, including but not limited to . . . the Fair Labor Standards Act . . . .

Schaefer signed the Agreement on December 13, 2002. AEP paid Schaefer the gross amount of $41,846.08, less applicable deductions, in exchange for the release. Schaefer consulted with his counsel in this case before he signed the Agreement.

AEP has moved for summary judgment based upon the release set forth in the Agreement. AEP contends that pursuant to the release, Schaefer has released and waived any claims he had against AEP, including the FLSA claim in the instant case. In the alternative, AEP argues that if the Court concludes that the release is not effective with regard to his FLSA claim, the Court should require Schaefer to return the $41,846.08 to AEP. Schaefer contends that AEP's motion must be rejected because the law is clear that an employee may waive, release, or settle his rights under the FLSA only in limited circumstances not applicable here. Schaefer also contends that the Court should not require him to return the money to AEP because the release is still valuable to AEP even if Schaefer's FLSA claim remains valid.

2

The Sixth Circuit has noted that "[o]rdinarily, public policy does not prohibit an otherwise valid release from acting as a waiver of a federal statutory cause of action." Shaheen v. B.F. Goodrich Co., 873 F.2d 105, 107 (6th Cir. 1989). The Supreme Court has recognized that FLSA claims fall squarely within the public policy exception to releases of federal statutory claims.[1] See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 65 S. Ct. 895 (1945). The question this Court must resolve in deciding the instant motion is whether the circumstances in this case fall outside of the prohibition against private releases of FLSA claims.

In Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S. Ct. 895 (1945), the Court considered whether an employee's release or waiver of all claims under the FLSA is a defense to a subsequent claim by the employee to recover liquidated damages. Relying upon the legislative history and the provisions and structure of the FLSA, the Court concluded "that Congress did not intend that an employee should be allowed to waive his right to liquidated damages." Id. at 706, 65 S. Ct. at 902. The Court stated:

> The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose standards of minimum wages and maximum hours were provided. Neither petitioner nor respondent suggests that the right to the basic statutory minium wage could be

---

[1] There are two recognized ways by which an employee may validly compromise a FLSA claim. First, pursuant to Section 216(c), the Secretary of Labor is authorized to supervise the payment of unpaid minimum wage and overtime compensation claims. An employee who accepts any such payment supervised by the Secretary is deemed to waive any claim under the FLSA, provided that the employer pays the back wages in full. Second, in a suit by an employee against an employer for back wages, a court may enter a stipulated judgment after the court scrutinizes the settlement for fairness. See Lynn's Food Stores, Inc. V. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982). Neither method of approval is implicated in this case.

> waived by any employee subject to the Act. No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act. We are of the opinion that the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages.

Id. at 706-07, 65 S. Ct. at 902 (footnotes omitted).

In O'Neil, the Court did not address the issue of whether an employee may release a FLSA claim where there is a bona fide dispute over coverage of the FLSA. However, the Court addressed the issue one year later in D.H. Schulte, Inc. V. Gangi, 328 U.S. 108, 66 S. Ct. 925 (1946), and held that such a compromise is invalid. In Gangi, a group of service and maintenance employees submitted claims for overtime pay and liquidated damages to their employer. The employer refused to pay the claims on the basis that he was not involved in interstate commerce and therefore not subject to the FLSA. However, the employer paid the overtime compensation and obtained releases after the employees threatened to file suit. Subsequently, the employees filed suit to recover liquidated damages under the FLSA. The employer argued that the plaintiffs' claims were barred by the releases and that such a result should be upheld where the employee's claim was in dispute. In rejecting this argument, the Court relied upon the policy rationale set forth in O'Neil:

> We think the purpose of the Act, which we repeat from the O'Neil case was to secure for the lowest paid segment of the nation's workers a subsistence wage, leads to the conclusion that neither wages nor the damages for withholding them are capable of reduction by compromise of controversies over coverage. Such a compromise thwarts the public policy of minimum wages, promptly paid, embodied in the Wage-Hour Act, by reducing the sum selected by Congress as proper compensation for withholding wages.

Id. at 116, 66 S. Ct. at 929 (footnote omitted). The Court did not establish an absolute rule against releases, however, because it left open "the possibility of compromises in other situations . . . such

as a dispute over the number of hours worked or the regular rate of employment." Id. at 114-15, 66 S. Ct. at 928.

In spite of the rule against releases set forth in O'Neil and Gangi, AEP contends that Runyan v. National Cash Register Corp., 787 F.2d 1039 (6th Cir. 1986) (en banc), and Thomas v. Louisiana, 534 F.2d 613 (5th Cir. 1976), provide support for this Court to enforce the release against Schaefer. In Runyan, the plaintiff, an experienced labor lawyer, alleged that his employer discharged him based upon his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). After the employer informed the plaintiff that it was going to terminate him because of his performance, the plaintiff expressed his opinion that the termination was motivated by age. The employer apparently reconsidered, and the parties entered into a one-year consulting agreement. Later, the employer agreed to the plaintiff's request to increase the employee's compensation under the consulting agreement in exchange for a release of all claims. The plaintiff filed suit after the consulting agreement expired and his relationship with the employer ended. The issue presented on appeal was whether an unsupervised release can bar a private action under the ADEA. The plaintiff argued that the release was ineffective because the ADEA incorporates the enforcement provisions of the FLSA. In deciding the issue, the court examined O'Neil and Gangi and noted that Gangi suggested a distinction between bona fide disputes over legal issues, which could not be resolved by a release, and bona fide disputes over factual issues, for which a release is considered valid. Runyan, 787 F.2d at 1041-43. The court concluded that the release was valid under the circumstances because the dispute concerned a factual issue – whether the employer discharged the plaintiff in violation of the ADEA – rather than a legal issue such as whether the ADEA was applicable. Id. at 1044. In addition, the court observed that the plaintiff was "a well-paid, well-

5

educated, labor lawyer with many years of experience in this area" and therefore was distinguishable from the vast majority of employees who have little knowledge about their employment rights. Id.

In Thomas, a group of employees of various Louisiana state agencies obtained a verdict against the state on their FLSA claims. Before a final judgment was entered in the case, the Supreme Court held in Employees of the Department of Public Health & Welfare v. Department of Public Health & Welfare, 411 U.S. 279, 93 S. Ct. 1614 (1973), that a state could not be sued for FLSA violations by its own employees. Following that decision, the parties entered into a settlement pursuant to which the state agreed to pay each plaintiff overtime compensation for two years, but no liquidated damages or attorneys' fees. Soon thereafter, Congress amended the FLSA to overturn the Supreme Court decision. The Fifth Circuit held that the settlement was binding because it was reached at a time when the plaintiffs did not have any rights under the FLSA (the Supreme Court had held that state employees could not sue their employers for FLSA violations) and, because of this situation, it was unlikely that the employees were disadvantaged by unequal bargaining power. Thomas, 534 F.2d at 614-15.

The Court disagrees with AEP's contention that Runyan and Thomas are on point and compel the conclusion that the release in this case is valid. Although the court in Runyan looked to Supreme Court authority regarding releases of FLSA claims, Runyan involved an ADEA claim, not a FLSA claim. In fact, the court observed that the purposes of the FLSA and the ADEA "are . . . obviously different" because the FLSA is concerned with providing a national wage standard for all workers, especially those who are the lowest paid and have no bargaining power, while the ADEA is directed "to an entirely different segment of employees, many of whom were highly paid and capable of securing legal assistance without difficulty." Runyan, 787 F.2d at 1043. Likewise,

6

Thomas is distinguishable from the instant case because, unlike the employees in Thomas who had no claims at all against their employer after the Supreme Court's decision in Employees of the Department of Public Health & Welfare, Schaefer continued to have a viable claim even after this Court granted AEP's motion for summary judgment. In other words, the death knell had not sounded on the claim. Judge Clark, who wrote a special concurrence in Thomas, emphasized the limited nature of the holding in that case when he wrote that the decision was "necessarily narrow" and should not "be construed to approve nonjudicial settlements of wage and hour claims in situations removed from the unique facts of this case." Thomas, 534 F.2d at 615.

  Given what the Court finds to be a lack of any persuasive authority upon which to hold that the release is binding, the Court concludes that Schaefer has not waived or released his FLSA claim. Moreover, in spite of its broad language, nothing in the release indicates that the parties specifically intended it to apply to this action, nor is there any indication that the amount of the severance payment approximated past due wages or liquidated damages recoverable in this case. Rather, the Agreement and the release it contains is a standard form agreement which AEP required its employees to sign as a condition to receipt of the severance payment, regardless of whether they then had a lawsuit pending against AEP. If AEP truly believed that the release applies to the claims in this case, it would be reasonable to expect that AEP would have filed a motion to dismiss in the Sixth Circuit based upon the release. In fact, AEP had approximately seven months to do so prior to oral argument on the appeal.

  The Court also rejects AEP's argument that Schaefer should be required to return the severance amount. Although AEP contends that it reasonably relied upon Schaefer's representation that he was waiving his FLSA claims in return for the severance payment, any such reliance by AEP

7

would have been unreasonable in light of the well-established rule precluding private settlements or releases of FLSA claims.  Furthermore, no inequity will result from allowing Schaefer to pursue his FLSA claims in this case and to retain the severance payment because, as noted above, the Agreement does not specifically mention the instant suit, and AEP paid the severance payment to all employees, including Schaefer, in exchange for a broad release of all claims against AEP.  AEP still retains that benefit even if the release does not apply to this or any other FLSA claim.

For the foregoing reasons, the Court will deny AEP's motion for summary judgment.

An Order consistent with this Opinion will be entered.


Dated:  November 1, 2004                                            /s/ Gordon J. Quist
                                                                 GORDON J. QUIST
                                                           UNITED STATES DISTRICT JUDGE